# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| **CLARENCE DENNIS DEES,** ) | |
| **# 234915,** ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 2:20-cv-1072-ECM-CWB |
| ) | |
| **NURSE BAILEY,** ) | |
| ) | |
| Defendant. ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.    Introduction[1]

Clarence Dennis Dees, an indigent state inmate, filed this action to assert claims under 42 U.S.C. § 1983 against numerous defendants on allegations that he was denied adequate medical care and subjected to excessive force while housed at Elmore Correctional Facility. (Doc. 1). At the direction of the court, Dees subsequently filed an Amended Complaint, which became the operative pleading setting forth his claims. (Docs. 7 & 8). Dees later amended further to add and omit various defendants. (Docs. 32, 33, 54, 55, 81, 83, & 87). All claims and defendants ultimately were dismissed except for a single claim against Nurse Bailey. (Docs. 44, 45, 59, 60, 67, 70, 94, 104, 122, & 124).

The remaining claim is premised upon the allegation that Nurse Bailey failed to provide Dees with certain prescribed medications. (Doc. 8 at pp. 6-7). Nurse Bailey in response filed a Special Report with supporting evidentiary materials and supplements (Docs. 26, 57, & 133), and Dees in turn has submitted verified supplemental information. (Docs. 131 & 134).

---

[1] Document numbers are as designated on the docket by the Clerk of Court. Pinpoint citations are to page numbers electronically affixed by the CM/ECF filing system and may not correspond to the original pagination as presented for filing.

1

The parties previously were given notice that "the court may at any time after the deadline for [Dees] to file a response to the Special Report, and without further notice to the parties, (1) treat the Special Report and any supporting evidentiary materials as a motion for summary judgment and (2) rule on the motion for summary judgment in accordance with the law after considering any responsive arguments and materials submitted by [Dees] … ." (Doc. 130). Pursuant to that disclosure, the undersigned will now treat the Special Report and supporting materials as having presented arguments for summary judgment and will recommend that summary judgment be granted in favor of Nurse Bailey as a matter of law.

## II.    Summary Judgment Standard

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. … [A fact] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (citation omitted).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for the motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id*. Alternatively, a movant who does not have a trial burden of production can simply assert that the nonmoving party "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. … [A] party who does not have the trial burden of production may

rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact."). Under either scenario, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exists as to each element of the underlying claims. *See Celotex Corp.*, 477 U.S. at 324; Fed. R. Civ. P. 56(c)(1)(A).

To establish a genuine dispute of material fact, the nonmoving party must produce such evidence as would be sufficient for a reasonable trier of fact to return a verdict in its favor. *See Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). When evaluating whether a genuine dispute of material fact exists, the court must view all of the evidence in a light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor. *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see also* Fed. R. Civ. P. 56(a). Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant is not relieved from the burden of demonstrating a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

## III.     Facts[2]

Dees alleges that two specific Keep on Person ("KOP") medications were confiscated on February 12, 2020 by now-dismissed defendants who were employed by the Alabama Department

---

[2] The "facts" set forth herein are based entirely upon the record at the summary judgment stage and may not constitute the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) ("[W]hat we state as 'facts' … for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.").

of Corrections. (Doc. 8 at p. 6). Dees further alleges that Nurse Bailey "denied me my medication [on February 13, 2020] because she said it was not in the cart with the medication, which means that whoever confiscated my personal property never gave my medication to healthcare." (*Id*.). According to Dees, "Nurse Bailey said she would look into the situation and make sure I got my medication, [but] she never returned." (*Id*.). Dees alleges that he once again "asked Nurse Bailey for my medication [on February 14, 2020, and] she said it was not in the cart again"; however, an officer with the Alabama Department of Corrections went to check the property room and "then returned with Nurse Bailey with my medicine" before multiple now-dismissed defendants intervened to prevent him from receiving the KOP medications. (*Id*. at pp. 6-7). Dees concludes by alleging that he was transferred from Elmore Correctional Facility to Bibb Correctional Facility later in the day on February 14, 2020 "without my KOP (Keep on Person) medication and I went without it about 8 days." (*Id*. at p. 7; *see also* Doc. 134 at p. 4).

As part of her Special Report (Doc. 26), Nurse Bailey submitted a sworn affidavit and various records (Docs. 26-1 through 26-3). Those materials reflect that Dees was transferred to Elmore Correctional Facility on February 12, 2020. (Doc. 26-2 at p. 4; *see also* Doc. 133 at p. 4). Nurse Bailey additionally explained in her affidavit that, as a matter of routine procedure, KOP medications are taken by Alabama Department of Corrections security staff and logged in at the receiving institution before being given to nursing staff for return to an inmate's possession:

> … When an inmate is transferred from one correctional facility to another, his KOP prescriptions are transferred by ADOC security and then logged into the new facility after the innate arrives so the KOP prescriptions can be provided to the nurses to give to the inmates.

(Doc. 26-1 at p. 3; *see also* Doc. 133 at p. 4).[3] Nurse Bailey avers that she would not have had

---

[3] Nurse Bailey at all relevant times was employed by Wexford Health Sources, Inc., which held the contract to provide healthcare services to inmates incarcerated by the Alabama Department of Corrections. (Doc. 26-1 at pp. 2-3; Doc. 133 at p. 3).

4

access to Dees' KOP medications during the interim period:

> As an LPN at the Elmore Correctional Facility, I would not have had access to Mr. Dees' KOP medications while the medications were being held by the Alabama Department of Corrections and not released to the medical staff at the time.

(Doc. 133 at pp. 5-6).[4]

The records submitted by Nurse Bailey also confirm that Dees was transferred from Elmore Correctional Facility to Bibb Correctional Facility on the afternoon of February 14, 2020 (Doc. 26-2 at p. 4) and that a new monthly supply of KOP medications was provided to Dees at that institution on February 20, 2020 (Doc. 133 at pp. 5, 9).[5]

---

[4]  The "ADOC Intake Current Medication List" dated February 14, 2020 reflects that Dees had most recently taken his KOP medications the prior day, *i.e.*, on February 13, 2020. (Doc. 57-1 at p. 6).  Nonetheless, because the facts at this stage must be construed in a light most favorable to Dees as the non-movant, the undersigned will accept as true Dees' averment that he was without his KOP medications from the time they were confiscated on February 12, 2020 until February 20, 2020.

[5]  The undersigned notes that the original Declaration of Katie Bailey, LPN (Doc. 26-1) as filed on March 3, 2021 conflicts in certain aspects with the Supplemental Declaration of Katie Bailey, LPN (Doc. 133) as filed on January 29, 2024.  For example, the original declaration stated that Nurse Bailey is "an LPN at the Staton Correctional Facility" and that Dees "was transferred to the Staton Correctional Facility on February 12, 2020." (Doc. 26-1 at p. 3).  Records submitted with the declaration, however, reflect that Dees was transferred <u>from</u> Staton Correctional Facility <u>to</u> Elmore Correctional Facility on the referenced date.  (Doc. 26-2 at p. 4).  The supplemental declaration subsequently corrected that "Dees was transferred to the Elmore Correctional Facility on February 12, 2020" and that Nurse Bailey served as an LPN at <u>both</u> Staton Correctional Facility <u>and</u> Elmore Correctional Facility.  (Doc. 133 at pp. 3-4).  The original declaration also stated that "the medical administration record, attached hereto, clearly shows, with my initials, that the 3 KOP prescriptions had been given to Mr. Dees on February 14, 2020." (Doc. 26-1 at p. 4).  However, the referenced records appear to relate to medications that were personally administered by the nursing staff and <u>not</u> to the KOP medications at issue.  (Doc. 26-3 at p. 2).  Again, Dees alleges that his KOP medications were not returned to him while at Elmore Correctional Facility and that he remained without them after his transfer from Elmore Correctional Facility on February 14, 2020 until receiving a new supply at Bibb Correctional Facility on February 20, 2020. (*See* Doc. 8 at pp. 6-7).

5

IV.   **Discussion**

    **A. Dees has not presented a genuine issue of material fact on his Eighth Amendment claim against Nurse Bailey.**

"The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). In order to establish "deliberate indifference to [a] serious medical need ..., [a p]laintiff[] must show: (1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). The standard consists of both objective and subjective components. *See, e.g., Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (explaining that an inmate is required to show "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts"); *see also Keohane v. Florida Dept. of Corrs. Sec.*, 952 F.3d 1257, 1266 (11th Cir. 2020) ("A prisoner bringing a deliberate-indifference claim has a steep hill to climb.").

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.* (quotation marks and citation omitted). When there is only a <u>delay</u> in medical treatment, the "delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for

6

the delay." *Hill*, 40 F.3d at 1189, *abrogated on other grounds*, *Hope v. Pelzer*, 536 U.S. 730 (2002).

With respect to the objective prong, it cannot be denied with any measure of credibility that the medical condition from which Dees suffers constitutes a "serious medical need" warranting treatment. *See Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). Yet the claim here does not allege a wholesale failure to treat that condition—the issue is whether a short-term delay in providing medications amounted to constitutionally-prohibited conduct. Critical to that issue is undisputed evidence that Nurse Bailey was familiar with the procedure utilized by the Alabama Department of Corrections that required KOP medications to be logged-in prior to being returned to arriving inmates such as Dees, and there is nothing to suggest that Nurse Bailey reasonably should have inferred on February 13, 2020 that the present unavailability of Dees' KOP medications would continue beyond the brief period required for processing. Nor does the record contain any medical evidence to suggest that a brief delay reasonably would be expected to exacerbate Dees' condition. *See Hill*, 40 F.3d at 1188 ("An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."). The undersigned therefore concludes that the totality of circumstances fail to present a genuine issue of fact as to whether Dees was facing an objectively serious medical need vis-à-vis the unavailability of his KOP medications on February 13, 2020 or as to whether Nurse Bailey responded in an objectively unreasonable manner by not taking action on February 13, 2020.[6]

---

[6] Nurse Bailey avers that she did not have access to Dees' KOP medications until the medications were released by the Alabama Department of Corrections (Doc. 133 at pp. 5-6), but there is nothing in the record to demonstrate that Nurse Bailey could not have inquired as to the status of the medications or, if necessary, requested an expedited release of the medications.

7

The record likewise fails to reflect a genuine issue of material fact on the subjective prong. Although an unconstitutional level of "deliberate indifference" does not require a showing that the defendant acted purposefully to cause harm, it clearly does involve something beyond mere negligent conduct. *Chandler v. Crosby,* 379 F.3d 1278, 1289-90 (11th Cir. 2004).[7] Accordingly, a plaintiff must show "an objectively 'serious medical need[]' ... and second, that the response made by [the defendant] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted); *see also Daniels v. Williams*, 474 U.S. 327, 330-33 (1986) ("The facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment."). In short, "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow*, 320 F.3d at 1245.

As stated above, the undisputed evidence establishes that Nurse Bailey reasonably could have expected Dees' KOP medications to be released without protracted delay. Dees has presented no direct or circumstantial evidence to suggest that Nurse Bailey had subjective knowledge that the delay would be more than routine and minimal. In fact, Dees acknowledges that the initial delay only lasted one additional day through February 14, 2020. The record likewise is devoid of any direct or circumstantial evidence to suggest that Nurse Bailey had subjective knowledge that a brief delay in Dees' KOP medications would pose a substantial risk of serious harm. *See Goebert*

---

[7] Whether the applicable standard is "more than mere negligence" or "more than gross negligence" is currently up for debate. *See Wade v. McDade*, 67 F.4th 1363, 1371-72 (11th Cir. 2023), *reh'g en banc granted*, *opinion vacated sub nom. Wade v. Ga. Corr. Health, LLC*, 83 F.4th 1332 (11th Cir. 2023). To err on the side of caution, the "more than mere negligence" standard will be applied in this instance.

*v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2012) (explaining that the subjective component can be met through either direct or circumstantial evidence). Any lesser showing than actual subjective knowledge is insufficient. *See, e.g., Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th. Cir. 1996) ("There is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not ... .'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)); *see also Campbell*, 169 F.3d at 1370. And given her knowledge as to the brief delays typically occasioned by inmate transfers between institutions, Nurse Bailey's failure to take immediate action regarding Dees' KOP medications on February 13, 2020 could not be deemed to have exceeded mere negligence.[8]

Consistent with the guidance provided in *Hill*, the undersigned also has considered "whether the delay worsened the medical condition" and "the reason for the delay." *Id*. at 1189. Although Dees asserts that his "viral load did raise" and that his "white blood cells did lower" such that he was at risk of having his underlying condition exacerbated (*see* Doc. 131 at p. 5 & Doc. 134 at pp. 5, 7), he has placed no "verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *See Hill*, 40 F.3d at 1188. Not only that, Dees has alleged that he was transferred away from Elmore Correctional Facility on February 14, 2020 and that he continued to be deprived of his KOP medications for several days thereafter. (Doc. 8 at p. 7: "On February 14, 2020 I was transferred from Elmore Correctional Facility to Bibb Correctional Facility. … I was transferred without my KOP (Keep on Person) medication and I went without it about 8 days."; *see also* Doc. 134 at p. 4). Because the only deprivation alleged against Nurse Bailey pertains to the one-day period between February 13, 2020 and

---

[8] The fact that Nurse Bailey did administer non-KOP medications to Dees on February 13, 2020 and/or February 14, 2020 (*see* Doc. 26-1 at p. 4 & Doc. 26-3 at p. 2) provides further evidence that she was not subjectively treating Dees' medical needs with deliberate indifference. *See Williams v. Arnold*, 207 F. App'x 980, 985 (11th Cir. 2006).

February 14, 2020 (Doc. 8 at p. 6), any deprivation beyond February 14, 2020 falls outside the scope of the pending claim.  Such an additional and unrelated period of deprivation also undermines the contention that the brief delay arguably attributable to Nurse Bailey was the cause of any fluctuation in Dees' laboratory findings.[9]

### B. Dees cannot proceed on any attempt to assert a state law medical malpractice claim under the Alabama Medical Liability Act.

In her Special Report, Nurse Bailey argued that Dees had not properly set forth a state law claim for medical malpractice.  (Doc. 26 at p. 12).  A review of the Amended Complaint, however, does not reveal any factual or legal averments suggesting that Dees was attempting to assert such a claim at that time.  (*See* Doc. 8).  Nonetheless, Dees responded to the Special Report by asserting that his "claim against Defendant, Katie Bailey for medical malpractice does state a claim" and for the first time cited provisions from the Alabama Medical Liability Act.  (Doc. 131 at pp. 3-4).

---

[9] In his most recent submission, Dees asserts that the February 14, 2020 "Intra-System Transfer/ Receiving Screening" form reflects that "Nurse Bailey, LPN didn't log … medication[s] (KOP (Keep on Person) that were given to her by Lt. Teresa Mitchell-Norman" and demonstrates that "my … medication was not transferred from one correctional facility to another."  (Doc. 134 at p. 2).  Not only is the referenced document not signed by Nurse Bailey or otherwise facially related to Nurse Bailey, it clearly notes that "Patient has KOP" at the time of his transfer to Bibb Correctional Facility and identifies the specific KOP medications at issue.  (Doc. 57-1). Ultimately, Dees' own sworn allegations establish that he took usual doses of his KOP medications on February 12, 2020, that he was told by Nurse Bailey on February 13, 2020 after being transferred to Elmore Correctional Facility that the KOP medications had not yet been released, that Nurse Bailey retrieved the KOP medications on February 14, 2020, that he was prevented by correctional staff from taking the KOP medications after Nurse Bailey obtained them, that he was transferred from Elmore Correctional Facility during the afternoon of February 14, 2020, and that he was not provided his KOP medications at the receiving facility until February 20, 2020. (Doc. 8 at pp. 6-7; Doc. 131 at p. 3; Doc. 134 at p. 4).  There is no evidence that Nurse Bailey impeded Dees from taking his KOP medications at any time between February 14, 2020 and February 20, 2020.  Analysis of the constitutional claim asserted against her thus is focused exclusively on her failure to take further action on February 13, 2020 upon learning that Dees' KOP medications were not then available.

To the extent Dees' response could be viewed as an attempt to amend his substantive allegations, such an effort to amend would be procedurally improper and far too late. The court's February 17, 2021 Order informed Dees that "[a]ll amendments to a complaint must be labeled with the words 'amendment to complaint' or similar language" and that "[e]xcept as permitted by Rule 15(a), Federal Rules of Civil Procedure, no amendment to a complaint will be accepted by the court for filing unless accompanied by a motion for leave to amend." (Doc. 9 at p. 5). Dees' response neither contained the requisite language nor was accompanied by a proper motion. The February 17, 2021 Order further informed Dees that "[a]ll amendments to the amended complaint and/or motions to amend must be filed within twenty-one (21) days of the defendants filing their special report" and that "[p]roposed amendments or motions to amend filed after this date will be considered untimely." (*Id*. at pp. 6-7). Nurse Bailey filed her Special Report on March 3, 2021, yet Dees' response purporting to assert a medical malpractice claim under the Alabama Medical Liability Act was not filed until January 22, 2024—over two-and-a-half years after the deadline. Even if measured by the dismissed defendants' Supplemental Special Report and Answer (Doc. 114) as submitted on April 19, 2022, Dees' response remains woefully belated to effectuate an amendment of his claims.

Moreover, "[i]n a medical-malpractice action, the plaintiff must present expert testimony establishing the appropriate standard of care, the doctor's deviation from that standard, and 'a proximate causal connection between the doctor's act or omission constituting the breach and the injury sustained by the plaintiff.'" *Rivard v. University of Alabama Health Servs. Found., P.C.,* 835 So. 2d 987, 988 (Ala. 2002) (quoting *Bradford v. McGee,* 534 So. 2d 1076, 1079 (Ala. 1988)). Therefore, "to survive a defendant health-care provider's summary-judgment motion alleging the absence of substantial evidence that would establish any one of these three items, the plaintiff must

11

submit—or identify in the existing record—substantial evidence that would in fact establish the challenged item or items." *Kraselsky ex rel Estate of Kraselsky v. Calderwood*, 166 So. 3d 115, 118 (Ala. 2014). And, again, "[t]o demonstrate that a genuine issue of material fact exists in a medical-malpractice action, a nonmovant must present 'expert testimony in support of [his] claim." *Harris v. Health Care Auth. of the City of Huntsville*, 6 So. 3d 468, 477 (Ala. 2008) (quoting *Swendsen v. Gross,* 530 So. 2d 764, 768 (Ala. 1988)). Dees has not pointed to any expert testimony in the record, has not submitted any testimony from a similarly situated healthcare provider, and has not relied upon a recognized standard or authoritative medical text or treatise. *See Ex parte HealthSouth Corp.*, 851 So. 2d 33, 33 (Ala. 2002). Nor are the issues so apparent as to be understood by a layman based upon common knowledge and experience such that expert authority is not required. *See Sorrell v. King*, 946 So. 2d 854, 861-863 (Ala. 2008). Finally, Dees' allegation that delayed doses of the KOP medications placed him at risk of having his underlying medical condition exacerbated (*see* Doc. 131 at p. 5 & Doc. 134 at pp. 5, 7) is insufficient to sustain a medical malpractice claim under Alabama law. *See Looney v. Moore*, 886 F.3d 1058, 1063 (11th Cir. 2018) ("Whether in the past or future, Plaintiffs can show, at most, only an increased risk of harm, not a probability that the alleged negligence actually caused any harm.") (citation omitted).[10]

## IV. Conclusion

For the above-stated reasons, the Magistrate Judge hereby **RECOMMENDS** as follows:

- that Nurse Bailey's construed motion for summary judgment (*see* Docs. 26, 57, & 133) be granted;

- that judgment be entered in favor of Nurse Bailey as a matter of law; and

---

[10] The undersigned in any event would recommend that the court decline to exercise supplemental jurisdiction over any claim under the Alabama Medical Liability Act. *See* 28 U.S.C. § 1367(c).

- that a final judgment be entered to dismiss all claims against Nurse Bailey with prejudice.

It is **ORDERED** that any objections to this Recommendation must be filed by **March 1, 2024**. An objecting party must identify the specific portion(s) of factual findings or legal conclusions to which objection is made and must describe in detail the basis for each objection(s). An objecting party also must identify any claim or defense that the Recommendation has not addressed. Frivolous, conclusive, or general objections will not be considered.

After receiving all objections, the District Judge will conduct a *de novo* review of the findings or recommendations to which objection is made. The District Judge may accept, reject, or modify the Recommendation or may refer the matter back to the Magistrate Judge with instructions for further proceedings. *See* 28 U.S.C. § 636(b)(1)(C). A party shall be deemed to have waived the right to challenge on appeal a District Judge's order to the extent it is based upon unobjected-to findings or recommendations. The court on appeal may review unobjected-to factual and legal conclusions only for plain error if necessary in the interests of justice. *See* 11th Cir. R. 3-1.

No party may appeal this Recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may appeal only from a final judgment ultimately entered by the District Judge.

**DONE** this the 16th day of February 2024.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**